UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Super Foods Services, Inc.,

      Plaintiff,                                            Case No. 1:18cv195

      v.                                                     Judge Michael R. Barrett

Reading Food Services, Inc, *et al.*,

      Defendants.

## **OPINION & ORDER**

This matter is before the Court upon Defendants Stephen Goessling and Julie Goessling's Motion to Dismiss (Doc. 6). Plaintiff Super Food Service Inc. has filed a Memorandum in Opposition (Doc. 12); and Defendants filed a Reply (Doc. 14).

**I.    BACKGROUND**

Plaintiff Super Food Services, Inc. sells and distributes groceries and other products to supermarkets for resale to the public and to other buyers. (Doc. 1, ¶ 2). Plaintiff entered into a sublease agreement ("Sublease") with Loro Incorporated ("Loro") for property located at 9200 Reading Road, Reading, Ohio 45215 ("Property"). (Id., ¶11). The Sublease permitted Loro to operate a grocery business on the Property. (Id., ¶14). Loro later assigned the Sublease to Defendant Reading Food Services, Inc. ("Reading") through an Assignment and Assumption Agreement (the "Assignment Agreement"). (Id., ¶15; Ex. C). Defendants Stephen and Julie Goessling are principals and/or shareholders of Reading. (Id., ¶¶4-5). While it is not spelled out in the Complaint, the documents attached to the Complaint make clear that the Goesslings operated a number of grocery

businesses in the Cincinnati area through Reading and other affiliated entities.

Along with the Assignment Agreement, Loro, Reading, and the Goesslings entered into a Guaranty ("1998 Guaranty").  (Id., ¶17; Ex. D).  Under the terms of the Guaranty, the Goesslings personally guaranteed: (1) the full and prompt payment of all rents, sums, and other charges due to be paid by Reading under the Sublease; and (2) the full and complete performance of all of Reading's obligations under the Sublease.  (Id., ¶¶17-18; Ex. D).

In November of 2012, Plaintiff loaned $550,000 to Reading and other affiliated entities owned and controlled by the Goesslings.  (Id., ¶21).  The Goesslings signed a second Guaranty ("2012 Guaranty") for this loan.  (Id., ¶21; Ex. F).  As part of the 2012 Guaranty, the Goesslings personally guaranteed, unconditionally and absolutely, the prompt payment to Plaintiff for monies owed by Reading on the $550,000 loan amount; the debt related to the Sublease; and the open account and contract for the stores being operated by the Goesslings.  (Id., ¶23; Ex. F).

Subsequent to the execution of the 2012 Guarantee, Plaintiff learned that Reading had closed its grocery business operations at the Property and that it no longer desired to occupy the Property.  (Id., ¶26).  In a letter dated April 4, 2014, Plaintiff contacted Defendants regarding Reading's failure to pay rent, utility bills, taxes, and other costs to Plaintiff under the Sublease.  (Id. at ¶29; Ex. G).  In the letter, Plaintiff made a demand of $87,738.98, which was the amount Reading owed under the Sublease at that time. (Id., ¶32). The Goesslings failed to make a payment on this amount. (Id. at ¶33).

On April 23, 2015, Plaintiff and Defendants, along with other entities, entered into a Loan Purchase and Assumption Agreement (the "Loan Purchase Agreement") and

2

Mutual Release and Discharge Agreement ("Mutual Release"). (Id., ¶¶34; Exs. H and I).

In the Loan Purchase Agreement, Plaintiff is the Lender, the entities owned by the Goesslings, including Reading, are the Borrowers; and the Goesslings are the Guarantors. Clifton Cooperative Market ("Clifton Coop") is the Assignee and CCM Realty Holding Co., LLC is the Designee. (Doc. 1, Ex. H).

In the recitals of the Purchase Agreement, the parties agreed:

> WHEREAS, Lender is a party to certain: loan documents as set forth on Exhibit A attached hereto and incorporated herein by reference; together with any amendments, modifications or restatements (the "Loan Documents"), representing all liabilities and obligations of Borrowers and Guarantors to Lender arising out, of loans made for benefit of Borrowers in the principal aggregate amount of $550,000 (the "Obligations"). As of April 17, 2015, the Parties hereby acknowledge that the current amount of the Obligations, exclusive of the attorneys' fees and other amounts Lender may recover under the Loan Documents, is $453,230.27.
>
> WHEREAS, Assignee desires to substitute itself as Obligor to Lender on the rights and obligations of Borrowers under the Loan Documents on the terms set forth below; and
>
> WHEREAS, Borrower and Guarantors have requested that Lender assign all rights. and obligations under the Loan Documents to Assignee; and
>
> WHEREAS, Lender, upon Assignee's acceptance of this Agreement and subject to the terms hereof as set forth below, agrees to fully and unconditionally release Borrowers and Guarantors with regards to any debt owed to Lender or its affiliates with regard to the Loan Documents and the Obligations.

(Doc. 1-1, Ex. H). Exhibit A to the Loan Purchase Agreement was not included with the copy of the Purchase Agreement filed with the Court as an exhibit to the Complaint.

The Mutual Release was signed by Plaintiff, Reading and other affiliated entities, and the Goesslings. The agreement was to release the parties' obligations for certain "Loan Debt" which resulted from "Retail Agreements," one of which related to the Property:

3

> the Retail Agreements provided a $250,000 Term Loan (as defined in the Retail Agreement) and a $300,000 Rebateable Loan (as defined in the Retail Agreement) through two (2) commercial promissory notes dated January 25, 2013 (together, the "Loan Debt") to [Reading and affiliated entities];

(Doc. 1-1, Ex. I).

Between January 2014 and December 2015, Reading failed to provide payment to Plaintiff for rent, utilities, and other miscellaneous expenses on the Property. (Doc. 1, ¶37). Plaintiff claims that as a result, Defendants owe $457,644.35, excluding interest, under the terms of the Assignment Agreement, the 1998 Guaranty and the 2012 Guaranty. (Id.)

Plaintiff brings two claims against the Goesslings: breach of contract based on the 1998 Guaranty (Count Two); and breach of contract based on the 2012 Guarantee (Count Three). The Goesslings move to dismiss these claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, legal conclusions conveyed as factual allegations need not be accepted as true, rather the reviewing court is allowed to draw on its own judicial experience and common sense

in determining whether or not the pleader can obtain any relief based on the purported facts. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009).

**B. Release of all Claims signed by Clifton Coop**

The Goesslings maintain that Plaintiff's breach of contract claims based on the 2012 Guaranty fail because Plaintiff sold the 2012 Guaranty to Clifton Coop. The Goesslings rely on a "Release of all Claims" signed by Clifton Coop and CCM Realty Holding Co., LLC on April 23, 2015. This document is attached to the Goessling's Motion to Dismiss. (Doc. 6-1). Plaintiff objects to the Goessling's reliance on this document because it was not referenced in the Complaint.

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88-89 (6th Cir. 1997)). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id*. Nevertheless, "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012).

The April 23, 2015 "Release of all Claims" is not referenced in the Complaint. While Clifton Coop is the Assignee and CCM Realty Holding is the Designee under the Loan Purchase Agreement, Clifton Coop is not mentioned in the Complaint, and Clifton

5

Coop or CCM Realty Holding are not parties to this action. Therefore, in deciding the Goesslings' Motion to Dismiss, the Court will not consider the April 23, 2015 "Release of all Claims" signed by Clifton Coop and CCM Realty Holding Co.

### C. Breach of contract based on the 1998 Guaranty and 2012 Guaranty

The Goesslings maintain that the 1998 Guaranty is not enforceable because it expired by its terms on December 30, 2015; or alternatively, the 1998 Guaranty is not enforceable because the 1998 Guaranty merged into the 2012 Guarantee.

The parties agree that Ohio law applies. In Ohio, courts construe guaranty agreements in the same manner as they interpret contracts. *R.L.R. Invests., L.L.C. v. Wilmington Horsemens Grp., L.L.C.*, 22 N.E.3d 233, 240 (Ohio Ct. App. 2014) (citing *MidAm Bank v. Dolin*, No. L–04–1033, 2005 WL 1532622 *8 (Ohio Ct. App. 2005)). One Ohio court has summarized the applicable rules of construction as follows:

> Words used in a guaranty are to be interpreted "'in light of the surrounding circumstances and of the object intended to accomplished.'" *Id.*, *quoting Morgan v. Boyer* (1883), 39 Ohio St. 324. "The clear and unambiguous terms of [a guaranty] * * * will not be extended by construction or implication to cover a period of time not embraced within those terms." *Fairview Realty Investors v. Seaair, Inc.*, 8th Dist. No. 81296, 2002–Ohio–6819, at ¶ 10, *citing Jules P. Storm & Sons, Inc. v. Blanchet* (1920), 120 Ohio St. 13, 165 N.E. 353, at paragraph one of the syllabus. However, "if a contract is ambiguous so that it may either extend or limit a guarantor's obligation, such contract should be construed to limit the obligation." *Id.*, *citing Yearling Properties, Inc. v. Tedder* (1988), 53 Ohio App.3d 52, 557 N.E.2d 1231.

*MidAm Bank v. Dolin*, 2005 WL 1532622, *8 (Ohio Ct. App. 2005).

The 1998 Guaranty provides:

Guarantor hereby covenants and agrees to and with Sublessor that, if Tenant should at any time default in the payment or performance of any of the Sublease requirements, then after the giving of any required notice to Tenant and the expiration of any applicable grace periods provided in the Lease, Guarantor shall and will forthwith pay or perform Tenant's obligations under the Sublease.

6

> . . .
>
> This Guaranty shall remain in full force and effect until the expiration of the Sublease term, as it may be extended.

(Doc. 1, Ex. D). According to the Sublease, a default occurs when a "Sublessee fails to make punctual payment of the rent or any other amount to be paid by Sublessee hereunder and such failure continues for ten (10) days after the receipt of written notice from Sublessor of such nonpayment by Sublessee." (Doc. 1, Ex. B).

The Goesslings argue that no action was taken against the Goesslings prior to December 30, 2015, which is the date the 1998 Guaranty expired; and therefore, Plaintiff is barred from enforcing the 1998 Guaranty. However, Plaintiff alleges that after Reading closed the grocery business at the Property and defaulted under the Sublease, Plaintiff sent a letter dated April 4, 2014 to Defendants which demanded payment from Defendants for unpaid rent, utilities, taxes, and other costs and fees.[1] The Court notes that at this juncture, the Goesslings have not questioned the adequacy of the notice of default, or raised other defenses with regard to April 4, 2014 letter. Therefore, based on the unambiguous terms of the 1998 Guaranty, payment was due by the Goesslings after they failed to cure the deficiency according to the terms of the 1998 Guaranty.

However, the Goesslings argue that this obligation to pay under the 1998 Guaranty was merged with 2012 Guaranty. The Goesslings point to language in the 2012 Guaranty, which states that "[t]he Guarantors guarantee . . . (ii) the payment of any and all sums due or becoming due under the Subleases, and the performance of any other of the Sublease Obligations . . ." (Doc, 1-1, Ex. F. PAGEID# 87). The notion that the

---

[1] The April 4, 2014 letter only references the 1998 Guaranty. (Doc, 1-1, Ex. G, PAGEID# 94).

7

sublease debt obligation from the 1998 Guaranty is covered by the 2012 Guaranty is bolstered by the following language in the recitals of the 2012 Guaranty:

> In part consideration of, and as an inducement to Super Food (i) making the two loans, and (ii) selling groceries (and possibly equipment) on open account, the Guarantors are willing to guarantee unconditionally and absolutely the prompt payment of the two loans, <u>Sublease debt</u>, and open account and contract debt for the Stores to Super Food, according to the terms of this Guarantee . . .

(Doc. 1-1, Ex. F, PAGEID# 88) (emphasis added).

However, the Goesslings maintain that they do not owe this debt because the Loan Purchase Agreement should be read to be a complete and unequivocal assignment of all of Plaintiff's rights to enforce the 2012 Guaranty to Clifton Coop. Plaintiff responds that the Loan Purchase Agreement did not pertain to the Property and Sublease, so that the Goesslings were not released of their obligations under the 2012 Guaranty.

The Loan Purchase Agreement references certain loan documents set forth in Exhibit A to the Agreement and refers to these documents as "Loan Documents." As explained above, Exhibit A was not included with the copy of the Loan Purchase Agreement filed with the Court. However, it is clear from the language of the Loan Purchase Agreement that the Loan Documents are those related to the same $550,000 loan amount covered by the 2012 Guaranty:

> [Super Foods] is a party to certain loan documents as set forth on Exhibit A attached hereto and incorporated herein by reference; together with any amendments, modifications or restatements (the "Loan Documents"), representing all liabilities and obligations of [Reading and affiliated entities] and [the Goesslings] to [Super Foods] arising out, of loans made for benefit of [Reading and affiliated entities] in the principal aggregate amount of $550,000 (the "Obligations").

(Doc. 1-1, PAGEID# 96). Therefore, Loan Purchase Agreement was limited to the liabilities and obligations "arising out of" the $550,000 in loans.

8

Language in the Mutual Release reinforces this interpretation of the language in Loan Purchase Agreement.  The Mutual Release was an agreement between Plaintiff, Reading and other affiliated entities, and the Goesslings.  In the recitals, the Mutual Release states that Reading and the other affiliated entities wish to assign their "obligations under the Loan Debt to an unrelated third party (the 'Assignee')."  (Doc. 1-1, Ex. I, PAGEID# 102).  The recitals also state that the Goesslings as guarantors, "wish to be released from any and all obligations of the Loan Debt."  (Doc. 1-1, Ex. I, PAGEID# 102).  Section 2.1 of the Mutual Release provides that the parties agreed to release and discharge:

> (a) the Retail Agreements, and/or (b) the Loan Debt, and/or (c) the sale or provision of goods or services by Super Food, and/or (d) any loan rebate, marketing fund, or any other such incentive (however designated) accruing or due or payment to any entity comprising [Reading and affiliated entities] or [the Goesslings], but no other contract or agreement.  Further, Super Food agrees to release its mortgage on 243 West Vine Street, Cincinnati, Ohio.

 (Doc. 1-1, Ex. I).  Section 2.3 of the Mutual Release specifically excludes any sublease from the release:

> . . . the mutual release and discharge of this Section shall not affect any other aspects of the business relationship between or amount the parties for any other contract, agreement, or business matter, all of which shall remain in full force an effect, including, but not limited to . . . any sublease that any entity of [Reading and affiliated entities] has entered into with Super Food or any affiliate of Super Food and that any Guarantor may personally guarantee.

(Doc. 1-1, Ex. I).  Therefore, the Loan Purchase Agreement and the Mutual Release were limited to the purchase, assumption of release of the of $550,000 loan; and did not include the purchase, assignment or release of any Sublease debt.  There is nothing in these documents which support the argument that Defendants assigned Plaintiff's rights to

9

enforce Sublease debt under the 2012 Guaranty to Clifton Coop.  Instead, the Mutual Release specifically excludes "any sublease that any entity of [Reading and affiliated entited] has entered into with Super Food or any affiliate of Super Food and that any Guarantor may personally guarantee."

Accordingly, the Goesslings are not entitled to dismissal of the breach of contract claims against them at this stage of the litigation.

### D. Punitive damages

The Goesslings maintain that Plaintiff's claim for punitive damages against them fails because punitive damages are not available in actions for breach of contract.  Under Ohio law, punitive damages are generally not available in actions for breach of contract.  *Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St. 3d 36, 45-46, 540 N.E.2d 1358, 1367 (Ohio 1989).  Therefore, to the extent Plaintiff claims it is entitled to punitive damages as a result of a breach of contract by the Goesslings, that claim is DISMISSED.

### III. CONCLUSION

Accordingly, Defendants Stephen Goessling and Julie Goessling's Motion to Dismiss (Doc. 6) is **GRANTED in PART** and **DENIED in PART**.  Defendants' Motion is GRANTED as to any claim Plaintiff brings for punitive damages as a result of a breach of contract by the Goesslings; and **DENIED** as to Plaintiff's two claims against the Goesslings: breach of contract based on the 1998 Guaranty (Count Two); and breach of contract based on the 2012 Guarantee (Count Three).

**IT IS SO ORDERED.**

                                             */s/ Michael R. Barrett*
                                             JUDGE MICHAEL R. BARRETT